Horeblower, C. J.,
delivered the opinion of the Court.
The questions presented by this case, are: First, If proof of the Staiute of New York, was material, on the trial, was it sufficiently proved, to entitle it to be read in evidence ? Secondly, will an action of debt, lie on a decree in Chancery ? Thirdly, If such action will lie, did the record produced, sustain either of the counts ?
First, Was the statute of New York sufficiently proved ? It was not exemplified in the manner prescribed by the act of Congress ; and I am of opinion, that mere parol proof, that the book *189 was read and received in the courts of New York as an authentic copy of their Statutes, was not sufficient. It is true, in Hale v. Ross, Penn. R. Harr. ed. 590, Mr. Justice Pennington said, that proof by an Attorney of the State of New York, that the volume was universally received in that State, as evidence of their Statutes, was sufficient. But nothing was said by either of the other judges to that effect; and it has never been sanctioned by any subsequent decision or practice of this court. The statutes, public and private, of other states, must be proved, by copies, authenticated and exemplified, pursuant to the act of Congress ; or, at least, by sworn copies from the original statutes.
Second, Will an action of debt lie, on a decree in Chancery ? First, let us inquire, whether such an action would lie, at the 'common law?
If it would not, then it will be necessary to inquire, whether our statute, Elm. Pig. 59, see. 4G, giving to decrees in Chancery the force and effect of judgments of the Supreme Court, has made them the foundation of actions at law ?
I am not aware, that the question has ever been discussed in this court, either upon general principles, or under the influence of our statute. But if we would not sustain an action of debt, upon a decree of our own Court of Chancery; it cannot be expected, we would do so, upon a decree of a court of Chancery of another State.
With all the research my means have afforded me, I have discovered but two instances in which such actions have been sustained in the American courts: one the case of Post et al. v. Neafic, in 3 Caines’ R. 22, and the other, that of Howard v. Howard, in 15 Mass. R. 196, both of which, I shall notice hereafter : while on the other hand, I find several cases both in England and this country, some of which, are directly against the action; and several of them, clearly show, that upon principle, no such action can be maintained.
In Post et al. v. Neafie, 3 Caines’ 22, which was an action of debt, upon a decree of the Court of Chancery of this State, Spencer, Ch. Justice, and Livingston, and Tompkins, Justices, held generally, and without any regard to the Statute of this State, that an action at law, would lie, upon a decree of a Court of Chancery, for the payment of money only. Kent and Thomp *190 son, Justices, on the other hand, were of opinion, that the action would not lie. Thompson, Justice, however, was influenced in his opinion, by the case of Hitchcock et al. v. Aiken, 1 Caines' R. 460, in which, it has been decided, (by a majority of the court,) that a judgment in a sister state, was to be treated, in all respects, as a foreign judgment, and considered as only prima facie evidence of the debt. He thought therefore, that if the court entertained an action of debt, on the decree of a foreign Court of Chancery, it might lead them into equitable inquiries and discussions, for the settlement of which, as a court of law, they might find themselves incompetent. It seems, therefore, that he thought, an action would lie, at law, upon the decree, of any Court of Chancery, where nothing but a simple debt was ordered to be paid, provided, that decree, could not be opened, and its merits inquired into. But Kent, Justice, took the broad ground, that an action at law, would not lie, even upon a decree of their own Court of Chancery, and much less upon a decree of the Court of Chancery of another State; since, (as the law was then holden to be) such decree, would be only, prima facie evidence of the debt. And in relation to the statute of this state, Elm. Dig. 59, sect. 46, the learned judge expressed a doubt, whether it intended any thing more, than to make decrees, a lien upon property, in like manner and effect, as judgments ; and not to confound the jurisdiction of Courts of Law and Equity; nor interfere with the rules, by which they were respectively governed.
This case, even if it had been decided by the unanimous opinion of the court, would not have been entitled to a controlling influence here;-and much less, in my opinion, will it guide our judgments, when we examine the grounds upon which the action was sustained by the majority of the court; and the able and conclusive arguments of Mr. Justice Kent, on the other side.
The only other case, I have found, in which an action has been sustained upon a decree in Equity, is that of Howard v. Howard, 15 Mass. R. 196. The case is briefly digested in 4 Amer. Com. Law, by Wheeler, page 140, and does not give us the arguments of court or counsel at length. But in Massachusetts, they have no separate Court of Chancery; and the Supreme Court exercises equity powers. It seems, that court have power to decree a divorce and alimony, and it would appear from the case, as di *191 gested, that there had been some doubt, whether such a decree could be enforced by execution from the equity side of the court; and consequently, whether there was any other way of carrying the decree into effect, but by an action of debt. The court, however, thought either remedy might be pursued, and therefore sustained the action.
That decision, however respectable the court by which it was made, will not, I apprehend, justify us, in departing from first principles, in a matter of so much importance; and in the determination of which, we are judicially and constitutionally bound, to adhere to the rules of the common law.
In opposition to the propriety of the action, it may be remarked, in the first place, that it is novel. This circumstance is adverted to by court and counsel, in the case of Post et al. v. Neafie, and in others to which I will refer. In that case, Kent, Justice, says, “no ipstance has been shown of such an action ; and the universal silence in the books, affords a strong presumption that the action will not lie,” and he cites Litt. Sect. 108; (and see also Butl. and Harg. notes on that section : Lib. 2 ch. 4, sec. 108, page 81. b. note 49.) But secondly, in every instance, so far as I can find, the courts have decided against the action, except in the two cases I have cited.
In the case of Stover v. Hinkley, an action was brought in the Circuit Court of the IJ. S. for the district of Connecticut, upon a decree from the equity side of the Supreme Court of that State, for the payment of a sum of money; and on a demurrer to the declaration, Chase, Justice, ruled that an action would not boon a decree. I find no report of this case, except in a marginal note on the 37th page of 3 Caines’ Hep. but the respectability of that reporter, entitles it to credit.
In Hugh v. Higgs, 8 Wheat. 697, Chief Justice Marshall, who delivered the opinion of the court, in very few words, decided, that an action at common law, would not lie on a decree in Chancery. It was a decree for the payment of money, and the Chief Justice said, it was admitted by the opposite counsel, that in general, an action does not be to recover money claimed under a decree of a Court of Equity.
The only ease I have met with in the English books, is that of Carpenter et al. v. Thornton, 3 Barn, and Ald. 52, and in that *192 the court of King’s Bench refused to maintain an action, upon a decree for a specific sum of money, founded upon equitable considerations only. Abbot, Ch. Justice said, if it had been on a bill for account, and a precise sum of money, had been found to be due. which might originally have formed a subject for an action at law, a court of law might, perhaps, in that case have lent its aid ; but not where the decree for the payment of money, comes merely out of an equitable obligation; and he adds, “ I cannot say, that a man compelled by a court of Equity, against his will, to pay a sum of money, impliedly agrees to pay it.” The other Judges all concurred. They put it on the ground, that a suit at law, must be founded on a legal obligation to pay; and that where there is such legal obligation, the court will presume a promise : but not when the debt is only an equitable one. Holroyd, Justice said, there was no instance of an action brought on a rule of court, for the payment of money, obtained in invüum ; and that a decree in equity, does not constitute a legal debt, and is not therefore the subject of an action at law.
The language of the courts, in the cases of Fry et al. v. Malcom, 4 Taunt. 705; Emerson v. Lashly, 2 H. Bl. 248; and in Smith v. Whaley, 2 Bos. and Pul. 482, all indicate the opinion that no action at law will lie upon a decree in Equity.
After looking into all these cases, I am satisfied that at common law, this action will not lie. I think there is no authority for it; and in my opinion, it is opposed to sound principles. Nor do I think the legislature intended to legalize such an action by the act of 1799. It appears to me from the very phraseology of the act, that they meant nothing more, than was suggested by Mr. Justice Kent, in Post v. Neafie, 3 Caines' 22; namely, to make decrees in Chancery, for the payment of money, a lien upon real estate. The language of the act, Elm. Dig. 59, is “ that the decree of the Court of Chancery, shall from the time of its being signed, have the force, operation and effect of a judgment at law, in the Supreme Court of this State, from the time of the actual entry of such judgment.” By designating the time of signing the decree, as the period, when the similarity of effect shall commence, and by limiting such similarity, to the effect that a judgment has, from the time of the actual entry thereof, the legislature plainly indicate, that they intended only to make a *193 decree as binding on the estate of a party, as a judgment is from the actual entry thereof. This is further evident, from naming judgments of the Supreme Court. They bind property in every part of the State, and the legislature intended, in that respect, to place decrees, on the same footing. What is the force, operation and effect, of a judgment ? It is to conclude the parties and bind their real estate. That an action maybe brought on a judgment, is not, the force, operation and effect of it; but an incident of, a use that may be made of it; or, one means of enforcing it. The statute is fully satisfied by this construction, and extending its influence beyond that, may lead to confusion and embarrassment. I yield to the reasoning of Justice Kent, in Post and Ñafie, my entire consent, and think many more difficulties, in suffering actions at law to be brought on decrees in equity, may be pointed out, than he has suggested. It is not always easy to say when a decree \s final: and when it is so, it is not final in the sense of a judgment at law. It is, at least, in a qualified sense, always open. It may be re-examined on a bill of review: it may be opened for a re-hearing; it may, in some eases, be mitigated, or modified or relieved against, upon petition. A. decree is often complicated, and requires the payment of various sums of money, in different rights, upon different accounts, and by or to different persons, and at different periods ; sometimes, on the happening of contingencies; and at other times, the payment of money, is connected with the execution of conveyances: or the specific performance of matters, by one party, or the-other. On which of such decrees, or on what branches of them, are actions at law, to be brought? If we begin, where shall we end ? Besides, after final decrees, equities may arise by the change or death of parties, or by the acts of parties, that may affect the rights, lessen or increase their equitable liabilities, or altogether discharge them. Upon a ca. sa. or ft. fa. or upon a sequestration or attachment, out of Chancery, upon its decree, a party may approach that court which is always open, by petition or on motion, and have the benefit of some equity that has arisen since the decree. But if an action at law is brought on the decree, how can such relief be given ? Suppose a decree for alimony, and afterwards the wife should return to the husband and be reconciled ; or should so badly conduct herself, as to entitle the hus *194 band, in equity, to be relieved from the decree ? Or, a change in his circumstances, from competency or wealth, to embarrassment and poverty, under providential dispensations, that would induce the Chancellor to lessen the amount of alimony? What could a court of law do in such case ? We could only give judgment and execution for the whole amount. In short, the objections to actions at law on decrees in equity, are more numerous and seriouS, than at first occurs to the mind; and fully account for the fact, that they have never been sustained in England.
But thirdly, did the record produced, sustain either count in the declaration ? The plaintiff has counted on four separate and independent decrees, prout patet per reoordum. Each count is a distinct and independent cause of action; and each must be supported by an entire record. This is clear from the consideration, that if the plaintiff can recover upon any count in this declaration, she could recover upon it, if it was the only count in the declaration. But the plaintiff has produced but one decree; that is, but one entire record of a decree in Chancery, and that does not correspond to and support any one single count in the declaration. Now, if a decree in Chancery, is to have the same effect as a judgment at law, so as to be the foundation of an action, it must be declared upon as a record, and the record when produced, must be such as the count calls for. But in this case, the plaintiff has attempted to split up the record into four parts; and because, by four successive interlocutory orders, four several sums of money are decreed to be paid, she has counted separately for each of those sums, as upon so many separate and distinct records or decrees. This, I apprehend, the plaintiff cannot do. If she can, then she might have brought four separate actions, all at once, or successively, or as many actions, as there had been interlocutory orders, in the progress of the cause; because, as I have before remarked, each count must of itself- contain a substantive cause of action, and be capable of standing alone. The declaration I think ought to have been on the whole decree, and the breach assigned in the non payment of the aggregate amount, or of such part of it, as remained unpaid.
I am of opinion therefore, that upon all these grounds, the verdict should be set aside, and a nonsuit entered.
Justices Ford, White, Dayton and Nevius concurred.

Judgment of nonsuit.

Cited in Shepherd, v. Newkirk, Spencer 346; Stone v. State, Id. 403.